JiFITZSIMMONS, Judge.
The approved land based casino operator, Harrah’s Jazz Company (Harrah’s), filed a petition for bankruptcy, and suspended construction on the casino in New Orleans. While in bankruptcy, the contract between the state and Harrah’s was modified and transferred to Jazz Casino Company, L.L.C. (Jazz Co.). The Jazz Co. was formed under the Plan of Reorganization confirmed by the United States Bankruptcy Court. The Louisiana Gaming Control Board (Board) renegotiated the casino operating contract that had been transferred to the successor Jazz Co. The Board approved the contract on March 20,1998.
*961 Two suits were filed in the Nineteenth Judicial District Court challenging the Board’s authority to renegotiate the contract without the approval of the legislature. On April 9, 1998, the district court signed a judgment. The district court found that La. R.S. 27:31 transferred the power and authority of the Louisiana Economic Development Gaming Corporation to the Board and that La. R.S. 27:245 was not repealed by La. R.S. 27:224 D and E. For those reasons, the district court held that the Board had the authority to renegotiate the casino operating contract without the approval of the legislature or the governor. We agree with those findings, and affirm the authority of the Board to renegotiate without the approval of the legislature or the governor. However, the district court also held that the Louisiana Legislature had no authority to approve the contract prior, or subsequent, to its execution. We reverse that portion of the judgment.
A resolution of this dispute lies in the answer to one pivotal issue. That issue is whether the Board[1] has the authority Rto renegotiate the casino contract with an operator who is in bankruptcy.
Louisiana Revised Statutes 27:224 D and 27:245 cascade through this issue. These two statutes can reasonably be read, without violation to the principles of logic, to work in tandem. Only sections 224 D and 245 specifically govern operators in bankruptcy. In section 224 D, the legislature reserved the right to authorize the governor[2] to act or to choose to act itself. Pursuant to La. R.S. 27:224 D, the legislature “may set aside or order that the [Board] renegotiate the provisions of the casino operating contract of a casino operator” in bankruptcy. In the absence of any action by the legislature, or by the governor with the required legislative approval, section 245 A provides that the Board “shall have the right to set aside or renegotiate the provisions of any casino operating contract of a casino operator” in bankruptcy.
The language in section 245 A is mandatory; the language in section 224 D is permissive. Both sections assign the rights of renegotiation by and to the Board. The only difference is who initiates the process of renegotiation or the decision to “set aside” the casino operating contract. Although, in this instance, the Board has already renegotiated the casino operating contract, section 224 D states that the legislature has the authority, “by Act or Resolution,”, to “set aside” that contract. Thus, if the legislature elects to act before the execution of the contract, section 224 D says that the last word remains with the legislature.[3]
18In so far as the judgment stated that the Board has the authority to renegotiate the contract without the approval of the legislature, the judgment is affirmed. In so far as the judgment denied the legislature a right to participate in the process, as reserved by section 224 D, it is reversed.
The specter of the constitutionality of statutes was raised in the district court. The issue of the constitutionality of section 224 D is reserved for the supreme court.
AFFIRMED IN PART, REVERSED IN PART.
LOTTINGER, C.J., concurs in part and dissents in part and assigns reasons.
KUHN, J., concurs and assigns reasons.
FOIL, J., dissents and assigns reasons.
GONZALES, J., dissents for the reasons set out by FOIL, J.
PARRO, J., concurs and assigns reasons.
FOGG, J., respectfully dissents and assigns reasons.
*962 LeBLANC, J., dissents for the reasons assigned by FOIL, J., and concurs in part for the reasons assigned by FOGG, J.

. Originally instituted as a regulatory agency, the Board was later also vested with supervisory authority over gaming in Louisiana. See La. R.S. 27:15 & 31.

. The governor may act by executive order, subject to legislative approval by vote or mail ballot.

. It is noted that the bankruptcy court has the authority to establish a time frame for the legislature to act or not act, as it so elects.